# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

RANDALL CLARK,                          )    Case No.  EDCV 08-0702-JTL
                                        )
              Plaintiff,                )    MEMORANDUM OPINION AND ORDER
                                        )
       v.                               )
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
              Defendant.                )
_____    )

## PROCEEDINGS

On June 2, 2008, Randall Clark ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his application for Disability Insurance Benefits. On June 19, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.   On September 29, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on November 14, 2008, defendant filed an Answer to the Complaint.  On January 27, 2009, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On December 14, 2006, plaintiff filed an application for Disability Insurance Benefits alleging a disability onset date of June 30, 1996. (See Administrative Record ["AR"] at 100-102). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 56-59, 46-55). Thereafter, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 65).

On December 27, 2007, the ALJ conducted a video hearing. (See AR at 17-44). Plaintiff appeared in San Bernardino, California, and the ALJ presided over the hearing from Portland, Maine. (AR at 19). Plaintiff appeared with counsel and testified. (AR at 24-37). Peter B. Webber, M.D., a vocational expert, and Carla Clark, plaintiff's ex-wife, also testified at the hearing. (AR at 30-40, 40-43). On February 7, 2008, the ALJ issued a decision denying benefits to plaintiff. (AR at 8-16). The ALJ determined that plaintiff last met the insured status requirements of the Social Security Act on September 30, 1997 ("the date last insured"). (AR at 9, 10). The ALJ determined that plaintiff had the following severe impairment: the residuals of three surgical repairs of recurring inguinal hernias. (AR at 11). The ALJ noted that plaintiff had the following non-severe impairments - chronic obstructive pulmonary disorder and affective and anxiety related disorders - as well as an arthritic back and knee or groin disorder other than the hiatal hernias that was not medically determinable. (Id.). The ALJ found that plaintiff's conditions did not meet or equal any of the impairments contained in the Listing of Impairments (see 20 C.F.R. Part 404, Subpart P, Appendix 1). (AR at 11-12). The ALJ discounted plaintiff's allegations of more severe physical and mental limitations (AR at 12-15), and determined that, through the date last insured, plaintiff retained the residual functional capacity to perform light work, excluding any work that requires more than occasional balancing, stooping, kneeling, crouching or crawling. (AR at 12). The ALJ found that, through the date last insured, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed and found plaintiff disabled under the framework of Medical Vocational Rule 202.20 (see 20 C.F.R. Part 404, Subpart P, Appendix 2). (AR at 15-16). Thus, the ALJ concluded that plaintiff was not disabled from June 30, 1996, plaintiff's

alleged onset date, through September 30, 1997, the date last insured.  (AR at 16).  The Appeals Council denied plaintiff's timely request for review of the ALJ's decision.  (AR at 2-4).

Thereafter, plaintiff appealed to the United States District Court.

## PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims:

1.      The ALJ failed to properly consider the Global Assessment of Functioning ("GAF") score of 45 assigned to plaintiff by an examining psychiatrist at the Barstow Counseling Center on June 19, 2007.

2.      The ALJ failed to meet her duty to develop the record regarding plaintiff's mental impairments.

3.      The ALJ failed to properly consider the lay witness testimony of Carla Clark, plaintiff's ex-wife, regarding plaintiff's functional limitations.

4.      The ALJ failed to consider the impact of plaintiff's non-exertional limitations at step five of the sequential evaluation.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.     The Sequential Evaluation**

A claimant is disabled under Title II of the Social Security Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantially gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137, 141 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantially gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times, the burden is on the claimant to establish his or her entitlement to disability insurance benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

///

4

**B.**   **Plaintiff's Mental Condition**

Plaintiff alleges that the ALJ failed to provide specific and legitimate reasons to properly reject the low Global Assessment of Functioning ("GAF")[1] score assigned to plaintiff by an examining psychiatrist on June 19, 2007. (Joint Stipulation at 3-4). Plaintiff also alleges that the low GAF score, combined with the medical expert's testimony at the hearing, triggered the ALJ's duty to develop the record with regard to plaintiff's mental condition. (Joint Stipulation at 8-10, 11). Defendant argues that the low GAF score assessed on June 19, 2007 is not relevant to the instant application for benefits, which covers the period from June 30, 1996, plaintiff's alleged onset date, through September 30, 1997, the date last insured. (Joint Stipulation at 4-8). Defendant argues that the ALJ properly explained the weight she gave to the low GAF score and did not err in her consideration of the low GAF score and the evidence in the record regarding plaintiff's mental condition. (Joint Stipulation at 5-7, 10-11).

On an Adult Psychiatric Evaluation form dated June 19, 2007, an examining physician at the Barstow Counseling Center assigned plaintiff a current GAF of 45. (AR at 224). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "[a]ny serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th. ed, rev. 2000).

In the decision, the ALJ discussed the evidence in the record regarding plaintiff's mental condition. The ALJ noted that plaintiff reported having panic attacks that started in November 2006, reported having panic disorders on May 23, 2007 (see AR at 225), and began treatment for depression on June 19, 2007, a disorder plaintiff said he had for about three years (see AR at 223-24). (AR at 13-14). The ALJ went on to note that an examining physician set plaintiff's GAF at 45 "indicating his belief that [plaintiff] was unable to function adequately in social, educational, and/or vocational settings." (AR at 14; see AR at 224). The ALJ also noted that

---

[1]   "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998); see also Morgan, 169 F.3d at 597-98.

on July 17, 2007, plaintiff reported fears about driving and panic attacks, and was treated for anxiety.  (AR at 14; see AR at 221).

The ALJ reviewed the evidence in the record and concluded that while plaintiff currently had a psychological disorder, plaintiff failed to establish that he suffered from a psychological disorder during the period relevant to the instant application:

> The record indicates that [plaintiff] has a psychological disorder now, but there is no indication that he had one on the date he was last insured.  In December 2006 he denied that it was severe enough to be material to this decision.  The absence of medical evidence prior to May 2007 or even indications of a psychological disorder prior to December 2006 prohibits a finding that [plaintiff] had a severe psychological disorder in 1997.  Moreover, even now the treatment notes do not support a finding that [plaintiff] had severe functional limitations.

(AR at 14).  The ALJ went on to explain that she gave the low GAF score little weight because it was not supported by objective evidence and was inconsistent with the record:

> Although global assessment of functioning was set at 45 in June 2007, there is no indication in the body of the report that [plaintiff] warranted such a low assessment and there is no indication how long he was limited and there is no reason to believe that he will not improve quickly with treatment.  The record contains no reports other than those by [plaintiff] and his wife that a psychological disorder limited his ability to do activities of daily living, maintain social functioning, concentrate on tasks or complete tasks timely.  There is no evidence of decompensation.

(Id.).  Based on the foregoing, the ALJ concluded that she was "not able to extrapolate from current medical evidence that [plaintiff] had a severe psychological disorder in 1997."  (Id.).

An ALJ is charged with determining a claimant's residual functional capacity based on an evaluation of the evidence as a whole. See 20 C.F.R. § 404.1546; Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (The ALJ is responsible for determining credibility and resolving conflicts in medical testimony). The opinions rendered by examining physicians must be evaluated by the ALJ pursuant to 20 C.F.R. Section 404.1527. An ALJ may reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because it was in the form of check-off reports with no explanation of the basis of the conclusions).

Here, the ALJ cited to the low GAF score in support of her conclusion that, at the time of the decision, plaintiff had a psychological disorder. (AR at 14). The ALJ properly found that the low GAF score assessed in June 2007 was not relevant to the period at issue in the instant application - June 30, 1996, plaintiff's alleged onset date, through September 30, 1997, the date last insured. See Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam) (holding only disabilities existing before date last insured establish entitlement to disability insurance benefits). In addition, even if the low GAF score did relate to the relevant period, the ALJ properly discredited the low GAF score because it was unsupported by objective evidence. See Thomas, 278 F.3d at 957. The ALJ noted that "there is no indication in the body of the report that he warranted such a low assessment and there is no indication how long [plaintiff] was limited" and found "no reason to believe that he will not improve quickly with treatment." (AR at 14). Accordingly, the ALJ properly discredited the low GAF score assessed by the examining physician.

Moreover, a low GAF score is not, in and of itself, sufficient to establish that plaintiff suffered from a medically determinable mental impairment that could be expected to result in death or last for at least 12 months. See 42 U.S.C. § 423(d)(1)(A). It is the claimant's duty to prove that he is disabled. 20 C.F.R. § 404.1512(a). In other words, in order to receive benefits, plaintiff must prove that he was unable "to engage in any substantial gainful activity by reason

1   of any medically determinable physical or mental impairment which can be expected to result

2   in death or . . . can be expected to last for a continuous period of not less than 12 months"

3   during the period covered by his application.  42 U.S.C. § 423(d)(1)(A); Mayes v. Massanari,

4   276 F.3d 453, 459 (9th Cir. 2001).  A claimant must bring to the ALJ's attention everything that

5   supports a disability determination, including medical or other evidence relating to the alleged

6   impairment and its effect on his or her ability to work.  20 C.F.R. § 404.1512(a).   Here, the

7   medical record in support of plaintiff's application is sparse and contains little evidence

8   addressing plaintiff's mental condition.  In the Psychiatric Review Technique dated February

9   8, 2007, Thomas Knox, Ph.D., assessed plaintiff's medical condition from June 30, 1996

10  through September 30, 1997 and found that there was insufficient evidence to determine

11  plaintiff's medical disposition and was unable to find any mention or reference to any

12  psychological problems in the record prior to September 30, 1997.  (AR at 199, 211).  Dr. Knox

13  noted that plaintiff alleged that he suffered from depression, bipolar and social phobia, but that

14  plaintiff "stated that he is not severely depressed - and did not feel that his mental health issues

15  were of great consequence to this claim - his ex-spouse attended and stated that he does not

16  have mental health issues."  (AR at 211).  Dr. Webber, the medical expert who testified at the

17  hearing, did not review the medical records from Barstow Counseling Center documenting

18  plaintiff's low assessed GAF.[2]  (AR at 23).  He did, however, review the other medical evidence

19  in the record and opined that plaintiff retained the residual functional capacity to perform work

20  in the light range.  (AR at 37-39).  With regard to plaintiff's mental functional limitation, Dr.

21  Webber testified that while plaintiff made allegations of mental functional limitations, there was

22  no evidence in the record to support plaintiff's allegations:

23              The emotional issues, these are all, as far as the material I

24              see, and I realize I don't have the last, the newest data, the

25

26  ───────────────────

27  [2] At the hearing, the ALJ admitted records from Barstow Community Counseling documenting plaintiff's treatment.  (AR at 21-22; see AR at 221-25).  The ALJ did not give the records from Barstow Community Counseling to Dr. Webber, noting that he Dr. Webber is not a psychologist, and

28  the ALJ stated that she would review the records herself after the hearing.  (AR at 22-23).

1  only thing I find really is [Psychiatric Review Technique dated

2  February 8, 2007 (AR 199-212)], which indicates there has

3  been some problem with depression, social anxiety, bipolar,

4  something undiagnosed or I guess that's what it means so

5  that I really don't have anything at all there to make any

6  judgments about either.  So, at this point, all I can say is that

7  he alleges several, several problems, but I don't have any

8  clinical data that helps me support any of them . . .

9  (AR at 38-39).

10  In addition, Dr. Webber's testimony and the low GAF score did not, as alleged by

11  plaintiff, trigger the ALJ's duty to develop the record.  (Joint Stipulation at 8-10, 11).  An ALJ has

12  the responsibility to develop "a complete medical history" and to "make every reasonable effort

13  to help [the claimant] get medical reports."  20 C.F.R. § 404.1512(d).  The ALJ has an

14  affirmative duty to develop the record when the evidence is ambiguous or "the record is

15  inadequate" to allow for proper evaluation of the evidence.  Tonapetyan v. Halter, 242 F.3d

16  1144, 1150 (9th Cir. 2001); see 20 C.F.R. §§ 404.1512(e), 416.912(e).  The ALJ may discharge

17  this duty in several ways, including subpoenaing the claimant's physicians, submitting questions

18  to the claimant's physicians, continuing the hearing, or keeping the record open after the

19  hearing to allow supplementation of the record.  Tonapetyan, 242 F.3d at 1150.

20  Although the ALJ has a duty to ensure the evidence in the record is not ambiguous or

21  insufficient to make a disability determination, the claimant still retains the duty to prove that he

22  or she was disabled and is entitled to benefits.  Mayes, 276 F.3d at 459.  Here, the evidence

23  regarding plaintiff's mental impairment was neither sufficiently ambiguous nor inadequate to

24  trigger the ALJ's duty to develop the record.  As discussed above, the low GAF score was

25  assessed in 2007, almost ten years after the date plaintiff was last insured, and has little

26  relevance to the instant application, and it was properly discredited by the ALJ because it was

27  unsupported by objective evidence.  With regard to Dr. Webber's testimony that he did not have

28  sufficient information to make a judgment regarding plaintiff's mental limitations, as the ALJ

noted, Dr. Webber was a medical expert and concluded, as did the ALJ, that there was insufficient evidence in the record establishing that plaintiff suffered from a mental condition during the relevant period.  These findings, coupled with plaintiff's denial that his mental condition was severe enough to be material to this decision, did not trigger the ALJ's duty to develop the record with regard to plaintiff's mental condition.

Thus, the ALJ did not err in her evaluation of plaintiff's mental condition and properly concluded that plaintiff did not suffer from a medically determinable mental impairment from June 30, 1996 through September 30, 1997.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (the burden of proving disability is on the claimant).

**C.   Lay Witness Testimony of Carla Clark, Plaintiff's Ex-Wife**

Plaintiff alleges that the ALJ improperly disregarded the testimony of Carla Clark, plaintiff's ex-wife, regarding plaintiff's functional limitations.  (Joint Stipulation at 11-14, 15-16).

A social security claimant may provide evidence from other sources to show the severity of his or her impairment and how the impairment affects his or her ability to work.  20 C.F.R. § 404.1513(d).  Other sources include, but are not limited to, nurse-practitioners, physicians' assistants, therapists, educational personnel, social welfare agency personnel, relatives, friends and clergy.  Id.  Ms. Clark, plaintiff's ex-wife, is properly categorized as an "other source" and the ALJ may consider her opinion regarding the severity of plaintiff's impairment and how it affects his ability to work.  See id.

An ALJ must consider the testimony of a competent lay witness - a person who is in a position to observe a claimant regularly and testifies regarding the claimant's symptoms and ability to work.  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  "Although courts have upheld the use of lay testimony in some instances, it is not the equivalent of medically acceptable diagnostic techniques that are ordinarily relied upon to establish a disability."  Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (internal quotation marks and citations omitted).  An ALJ may reject the testimony of an "other source" by providing reasons germane to that witness.  See Dodrill, 12 F.3d at 919; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

At the hearing, Ms. Clark testified that she saw plaintiff daily since 1996. (AR at 41). Ms. Clark testified that plaintiff had problems with pain and that he needed to lay down every 20-30 minutes, and then had to stand for a bit; that he has problems with depression, following through and finishing things, and was not self sufficient. (AR at 41-43). Ms. Clark also testified that plaintiff visited her at her house almost every day. (AR at 42).

In the decision, the ALJ provided several reasons for discounting Ms. Clark's testimony regarding plaintiff's functional limitations and the existence of a mental condition. (AR at 14). The ALJ noted that Ms. Clark's testimony that plaintiff was irritable with her did not establish that he would be irritable with others, such as coworkers and supervisors. (Id.). Moreover, the ALJ noted that Ms. Clark is not a medical expert and did not "know or provide a medical expert opinion of what is motivating [plaintiff's] behavior." (Id.). Thus, the ALJ concluded that she "is not able to extrapolate" from the evidence in the record that plaintiff had a severe psychological disorder during the relevant period. (Id.). The ALJ's reasons for discrediting Ms. Clark's testimony were sufficiently specific to Ms. Clark and Ms. Clark's relationship with plaintiff. Thus, the ALJ properly discredited Ms. Clark's testimony. See Lewis, 236 F.3d at 510-11 (an ALJ can properly disregard lay witness testimony as to a claimant's symptoms if the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.") (internal citations omitted).

**D.     Vocational Expert Testimony**

Plaintiff asserts that the ALJ failed to obtain evidence from a vocational expert addressing the effect of plaintiff's non-exertional impairments, evinced by the low GAF score and Ms. Clark's testimony, on plaintiff's residual functional capacity. (Joint Stipulation at 16-17, 20).

At step five of the sequential analysis, an ALJ may properly omit an alleged impairment from the analysis if the omission of the impairment is supported by substantial evidence in the record. See Magallanes, 881 F.2d at 756-57. Here, the ALJ did just that. As discussed above, the ALJ properly discounted the low GAF score because it did not relate to the period relevant to the instant application and it was unsupported by objective evidence (see supra Section B),

and properly provided germane reasons for discounting Ms. Clark's testimony (see supra Section C).  Thus, it was not necessary for the ALJ to obtain vocational expert testimony and the ALJ properly relied on the guidelines set forth in the framework of Medical Vocational Rule 202.20.

## ORDER

After careful consideration of all documents filed in this matter, this Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the Commissioner of Social Security Administration.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 4, 2009

                                                        /s/
                                         _____
                                         JENNIFER T. LUM
                                         UNITED STATES MAGISTRATE JUDGE